EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FRANCISCO ORTEGA OTERO, acusado y apelante.

*Número:* CR-68-28    *Resuelto:* 27 de junio de 1969

*Antonio Andino Elías*, abogado del apelante; *J. F. Rodríguez Rivera, Procurador General Interino*, y *Federico Rodríguez Gelpí, Procurador General Auxiliar*, abogados de El Pueblo.

PER CURIAM: Francisco Ortega Otero fue acusado de la comisión de una violación al Art. 5-801 de la Ley de Vehículos y Tránsito de Puerto Rico. Celebrado el juicio el 29 de septiembre de 1967 se le encontró culpable de la violación imputada en la denuncia y se le impuso una multa de $150.00, se le suspendió la licencia de manejar automóviles por el término de un año, a partir de la fecha de la sentencia y se le impuso además una suspensión adicional de licencia de tres meses por haberse negado el acusado a someterse a uno de los análisis químicos dispuestos por ley.

No conforme con la sentencia el acusado apeló para ante este Tribunal alegando los siguientes errores:

"1—El fallo no está sostenido por la prueba.

2—Cometió error el Tribunal Sentenciador al decretar la suspensión adicional de la licencia por haberse negado el acusado a dejarse extraer la sangre."

La prueba presentada por el fiscal consistió en las declaraciones de los testigos Sr. Luis Antomattei y del Sr. José Martínez.

El Sr. Luis Antomattei declara, en síntesis, que es policía y el día 11 de julio de 1967 a las ocho de la mañana prestaba servicios en la Carretera Núm. 2, intersección con la Avenida "Wall" cerca del Cuartel de Juan Domingo. El acusado iba manejando un automóvil en dirección de Santurce hacia Bayamón. Al llegar al lugar donde Antomattei estaba éste le hizo señal de que no doblara hacia la Avenida "Wall" a lo que el acusado hizo caso omiso. Antomattei lo mandó a detener haciéndole señales de pito y con las manos

pero el acusado no hizo caso y siguió camino. El policía le cogió el número de la tablilla para llamar a Obras Públicas. Como a los veinte minutos regresa el acusado por el callejón hacia la Carretera Núm. 2. Antomattei le indicó nuevamente que se detuviera. Cuando se fue a alinear emprendió la marcha nuevamente. En eso venía el policía Martínez en la patrulla y Antomattei le indicó que siguiera el vehículo del acusado y lo detuviera. Martínez lo siguió y lo detuvo cerca de Marcelino Mercury. Luego Antomattei se fue para el Cuartel y estando en el patio llegó Martínez con el acusado. Al descender el acusado del *jeep* notó que se encontraba en estado de embriaguez pues tenía la vista rojiza y se tambaleaba al caminar. Procedió a llevar al acusado al cuartel que se encontraba en la segunda planta. Cuando iban subiendo él lo agarró por un brazo para que no se cayera. Estando en el descanso el acusado forcejeó con el policía y le tiró dos o tres golpes. Cuando estaban arriba habló con el acusado y notó que expedía un fuerte olor a licor y que hablaba recortado con voz pesada. Luego lo esposó y lo llevó al hospital de Bayamón para hacerle el análisis de sangre. En el hospital él accedió a sacarse la sangre pero cuando el doctor cogió la jeringuilla se negó a ello.

El Sr. José Martínez declara que es policía. El 11 de julio de 1967 estaba de servicio en el Barrio Juan Domingo. Intervino con el acusado cuando el policía Antomattei le iba a expedir un boleto y arrancó y se fue. El policía le hizo señas para que lo siguiera lo cual hizo y lo detuvo cerca de Marcelino Mercury. En el auto del acusado iba una señora, un señor y un muchacho. Al detenerlo le pidió la licencia la cual le entregó el acusado. Lo mandó a bajarse del automóvil y observó que estaba en aparente estado de embriaguez. El acusado se tambaleaba, tenía los ojos rojizos, expedía olor a licor y no se le entendía casi lo que decía. Le pidió que lo acompañara hasta donde estaba Antomattei a lo que se negó. Llamó a la estación y pidió un guardia pero en eso pasaba

el Sargento Santiago y lo ayudó. Llevó al acusado al cuartel de Juan Domingo. El policía Antomattei que estaba esperando lo sacó de la patrulla y cuando iba subiendo la escalera el acusado lo agredió. El le había dicho que él aparentaba estar en estado de embriaguez que si se dejaba hacer uno de los análisis químicos voluntariamente a lo que él accedió. Luego llevaron al acusado al hospital y el doctor le dijo que si se dejaba sacar la sangre a lo que éste accedió pero cuando el doctor tenía la jeringuilla para sacársela él se negó. A preguntas del magistrado declaró que advirtió al acusado "que la licencia se mantendría hasta que se viera el caso y de salir culpable se le podría suspender la licencia por dos años."

Por la defensa declararon Pedro Ramos Cruz, Víctor Otero y el propio acusado.

El Sr. Pedro Ramos Cruz declaró que es comerciante y dueño de taxis y que el acusado maneja uno de sus automóviles. El día 11 de julio como a las seis y media de la mañana vio al acusado cuando fue a entregarle el dinero del taxi. El turno de trabajo del acusado era desde las diez y media u once de la noche. El aspecto del acusado era el de una persona trasnochada. No notó que expidiera olor a licor. Que tiene por norma quitarle el carro a todo chofer que ingiera licor durante su turno y no le dan más trabajo.

El señor Víctor Otero declaró que el día 11 de julio estando en la parada de guaguas de la dieciséis y media pasó un amigo llamado Aníbal y le dio "pon". Fueron a un puesto en la quince a echarle gasolina al carro y se encontraron allí con el acusado. Hablaron con él y le preguntaron que para donde iba a lo que éste le informó que a entregar el carro. Aníbal le dijo que como él iba para Bayamón entregara el auto para llevarlo. Llegaron a la casa del dueño del taxi y el acusado lo entregó. Entonces Aníbal le dijo al acusado que condujera y así éste lo hizo. Al llegar a Juan Domingo él dobló hacia su casa en el momento que venía saliendo su esposa. Se detuvo y le preguntó a donde se dirigía. Ella le dijo

que iba para Bayamón y él le dijo que la iba a llevar. Salieron para Bayamón y frente a Marcelino Mercury había una patrulla y el acusado se detuvo y el policía le pidió la licencia. En ese momento llegó otra patrulla y le dijeron al acusado que estaba arrestado. Lo montaron en la patrulla y la policía les dijo que si querían ayudarlo fueran al cuartel. Él no fue al cuartel porque tenía que trabajar temprano. En ningún momento hicieron uso de licor.

El acusado Francisco Ortega Otero declara que maneja un vehículo para el señor Pedro Ramos Cruz. Él empezó a trabajar de diez y media a once de la noche y entregó el carro el 11 de julio entre seis y media, siete menos cuarto a siete de la mañana. Al señor Víctor Otero lo vio en la estación de gasolina de la Rochdale Taxi Cabs. Él andaba con otro señor llamado Aníbal. Del garage fue a entregar el auto a la calle Monserrate. Estando en el garage el Sr. Víctor Otero le preguntó que para donde él iba y le dijo que para Bayamón. Entonces le pidió "pon". Aníbal le pidió que guiara el carro. Cuando va llegando a su casa ve a su esposa que venía para Bayamón. Cuando regresó de allá para acá se encuentra la patrulla que se le va detrás y lo manda a detenerse. Sacó su licencia y la del auto y las entregó. El policía le dijo que estaba arrestado porque estaba borracho, a lo que contestó que no estaba borracho, que trabajaba de noche y que gagueaba. Lo sacaron del carro y lo metieron en la patrulla. Lo llevaron al Cuartel de Juan Domingo donde lo esposaron, lo metieron a un cuartito y el policía Antomattei le dio dos puños por la espalda. Lo llevaron al Hospital de Bayamón a sacarse la sangre lo que no permitió porque la enfermera dijo que era peligroso y además el médico lo había dicho.

■ Como puede apreciarse se trata de un conflicto en la prueba que fue resuelto en contra del acusado. No hay nada en la prueba que demuestre que el tribunal sentenciador incurriera en manifiesto error, perjuicio o parcialidad. Ha

sido norma de este Tribunal no intervenir con la sana discreción del juez sentenciador al apreciar la prueba ni constituirse en tribunal de primera instancia para sustituir el criterio de este Tribunal por el del tribunal a quo. *Pueblo* v. *Rivera Maldonado*, 90 D.P.R. 503 (1964); *Pueblo* v. *López Rodríguez*, 88 D.P.R. 474 (1963), y casos allí citados.

El segundo error fue cometido. Lo que la prueba establece es que al acusado se le requirió para que se sometiera al análisis de la sangre a lo cual se negó. Sin embargo no se le advirtió que tenía derecho a elegir entre someterse al análisis de sangre, o al de orina o al de aliento. Ante su negativa a someterse al análisis de sangre no se le requirió para que se sometiera a uno de los otros dos análisis. La prueba no justifica, por tanto, la conclusión de que el apelante se negara a someterse al análisis químico que dispone la ley, que son tres y de los cuales el acusado tiene derecho a elegir uno.

El pronunciamiento sobre una suspensión adicional de la licencia de conductor por el término de 3 meses es improcedente. *Se modificará la sentencia apelada y así modificada, se confirmará.*